May it please the court, my name is Rene Valladares and I represent Mr. Jones in this case. The district court erred in two significant ways in concluding that the gun that was found during the course of the execution of a search warrant was in plain view. The first is by using overgeneralizations of the connection between guns and drugs, an overgeneralization that now has been put in question by the Supreme Court. The second is by basing its inference that in this particular case the gun that was found was tied to drugs by using incomplete facts. Looking at the first issue, the overgeneralization that the court indulged upon. The officers were acting pursuant to a valid warrant. You concede that, don't you? They were acting pursuant to a warrant and the warrant was valid, yes. Pursuant to that warrant, did they have a right to look in the microwave for drugs? They had the right to look in the microwave for drugs, indeed. Once they found the weapon, could they have frozen the situation to determine, A, whether your client was in fact a felon and, B, whether the gun was his or not? They may have been able to freeze the, as the Court stated, the situation, the scene. But nonetheless, there is really no evidence saying at that point that my client was either the possessor of that gun, the owner of that gun. The record is bereft of any evidence showing that. My understanding is he was advised of his Miranda rights? Correct. That is after the gun was recovered, after my client was detained, after my client was questioned. And he admitted he was in possession of the weapon? At that point, he did admit that, indeed. Now, also, the record is unclear as to how things played out precisely when my client was questioned in relationship to the finding of the gun, etc. The record is also unclear as to whether the gun was found at the beginning of the search, at the end of the search. All those things are unclear from the record. What difference does that make? Guns are tools of the trade, of the narcotics trade, are they not? The Supreme Court is so held. Well, the Supreme Court, actually, in Richards v. Wisconsin, did put that overgeneralization in question. Now, Richards is a knock-and-announce case, but the same rationale applies in this case. In Richards, the court said that it was dangerous to make that categorical generalization for two reasons. One, because it has too broad a sweep. The individual that's selling two rocks of cocaine ends up being lumped. Well, knock-and-announce is another thing. But once they're properly on the premises with a valid search warrant, has the Supreme Court said that the officers have a right to seize firearms, which are a tool of the trade, of the drug trade? Well, no, Your Honor. I think that still would be controlled by Richards. I think that the fact that Richards is a knock-and-announce case does not necessarily mean that the case does not apply here. I think it applies actually with more force, because Richards being a knock-and-announce case, in the knock-and-announce context, to be able to dispense with knock-and-announce, what the officer needs to have is reasonable suspicion that there is an exigency. In this case, what the officer needs to have is probable cause that the object that's being viewed is related to criminality. This is pretty close to Simpson, isn't it? Again, Your Honor, the problem, though, is that Simpson is a pre-Richards case. And I think that after Richards, I think that the rationale in Simpson is refined. And the court, a court, is at that point mandated to look at not simply a categorical connection, but rather at the totality of the circumstances. The officers prior to executing the search warrant have been informed by the informant who had gone into the apartment and attempted or conducted a control by and told the officers that he had been threatened, right? That's correct, Your Honor. And actually, he had he said that he had been threatened with being shot. There are several problems with that, though. Number one, this is an untested informant whose reliability was unknown. The informant also was working for consideration. He or she had a pending case. I guess the question in my mind, was it reasonable for the law enforcement officers to believe, possessed with that information from the informant, that there was a probability that guns were present on the premises? And my answer to that is no, because of the following. Number one, the informant never saw a gun in that residence. At least the record doesn't show that. Or anybody in the residence being in possession of a gun. But he was threatened that they were going to blow his head off. He was threatened. So couldn't he assume there's a gun if someone threatens to blow your head off? But the problem, again, going back to what I was stating before, is that that is not enough to go ahead and draw a connection between drugs and guns in this case, because there's nothing in the record saying that that threat had anything to do whatsoever with narcotics. It may have been over a spat dealing with a girlfriend or whatever. However, counsel, it is true that these police, in going into search with the search warrant, asked for a Class III warrant classification, didn't they? They did. And that meant that they wanted to have people who were prepared to search for guns and for weapons, because that's the kind of a squad that they had go in to search, given what they had in front of them and given the warrant that they had. Isn't that correct? That is correct, Your Honor. And yet, when you talk about Richards, Richards talks about knock and announce and a general nexus. We're not talking about a general nexus here. We're talking about a specific nexus to specific facts which had been alleged, and with a warrant for which the police had laid out, if you will, that they needed more than the normal search. They needed to have a Class III warrant, and not only that, but there are code sections, 18 U.S.C. 924, 18 U.S.C. 922, both which would suggest that the defendant could get a greater sentence if he was a drug user with a firearm. So it seems to me, given the specific nexus, rather than the general, one would go where the officers went. And I want you to respond to that because I'm laying it out to you, trying to put down exactly what I have to look at here, and we're not talking about a general knock and announce nexus. We're talking about specific facts alleged and a warrant which required a Class III classification, and now somebody going in to determine what to do. And my answer to that is twofold, Your Honor. Number two is that I dispute that there is a specific nexus, inasmuch as, as I said, there is nothing showing in the record that these threats, these alleged threats that were made to the informant had anything to do with narcotics. There's just a statement that there is a threat, but there's nothing saying that those threats were in any way related to narcotics dealing. The second point is that as to the fact that the officers did secure a warrant, in this case that was a Class III warrant, again, my response to that is that in the context of probable cause, excuse me, in the context of plain view, there is more needed than in the context of knock and announce. In knock and announce, the only thing the officer needs to have is reasonable belief that their reasonable suspicion that there is an exigency, a potential exigency. Here, officer needs to have probable cause. But you have not appealed that the warrant was – there was not probable cause for the issuance of the warrant that was issued, have you? I don't dispute that. All right. Nor have you appealed anything concerning the knock and announce statements which you have related. That issue was litigated below and under that. So that the bottom line is if they had a valid warrant and they found a firearm, why could they not confiscate the firearm and relate it for any crime which was obvious? Because at that point, there was no crime that was obvious. That is the second point. Well, as soon as they found out that this man was a former felon in possession. The problem is that it seems from the record that that took place after the gun was secured. If anything, the record is vague on that particular issue. But at a minimum, the record is not clear as to whether my client was – Just give me a hand here. Help me. If they – your position is they had no right to seize the gun. Is that your position? Absolutely correct. Okay. I understand. Okay. We've taken you a little over your time. We'll give you 30 seconds for rebuttal. Thank you very much. From the government at this time. Counsel. May it please the Court and good morning. My name is Andrew Duncan. I'm an assistant U.S. attorney for the District of Nevada, and I represent the appellee, the United States. Can you clear up for us from the record when the officers learned that Jones was in fact a felon? The record is unclear as to that, and so for that purposes we'll concede that it may very well have been after the seizure of the firearm. Okay. As the Court noted, the requirements for seizure under plain view is that the initial intrusion must be unlawful and that the incriminating nature of the evidence is immediately apparent. And also under Hicks, at the seizure, the evidence was seized based on a probable cause standard. As the Court has noted, in this case, there's no debate that there was a valid warrant. There's also no debate that the police officers were in a place that they were allowed to be to search for drugs, looking inside of the microwave oven. But there's also no dispute that you didn't know upon entry that the possession of the gun was illegal because he was a felon in possession. That is correct. So your friend across the aisle says that you had no reason to seize the gun since he could be a licensed gun holder. It's our position that, pursuant to Ninth Circuit case law and pursuant to the Simpson case, that this issue has already been decided in this circuit. And under Simpson, this Court noted that officers may seize firearms during the course of executing a search warrant for narcotics activity. So it's our position that that is the case law in this circuit and every other circuit that I could research, that this was the case both before the knock-and-announce case, Richards, and since Richards, that this has never changed. It's also important to note that the officers in this case had specific information in regard to the suspects possessing a weapon. In this case, the confidential informant noted that he had been battered on a previous occasion and that the suspects had threatened to shoot him. So they had specific information in this case in regard to the fact that there may be weapons. So it's our position that, based on Simpson, that the officer was allowed to seize the weapon. Defense has essentially relied on the knock-and-announce case, Richards v. Wisconsin, a 1997 case. And it's our position that it's inapplicable in this case in that while both knock-and-announce and the plain view doctrine demand analysis under the Fourth Amendment, there are two completely different things here. In this case, we have, as the Court noted, a very specific nexus. We have this Class III warrant where they're concerned about danger. We have specific information, and we also, when they go in, we have the specific information that the event actually occurred here, is that they go in and they find the weapon. And it's our position that under Simpson and under every other case and every other circuit that this was allowed. Suppose there was no information about weapons, that the officers have a valid search warrant to search for narcotics, but they have no information about weapons. They enter an apartment. They search. They open up a refrigerator, a microwave, whatever, and they find a weapon. What are they entitled to do? It would be our position that they would be entitled to seize that weapon, pursuant to the precedent established in the Simpson case, that Simpson did not fact-specific say only under certain circumstances where they have previous information, that the whole thing in Simpson essentially was that when the police officers are executing a search warrant for narcotics and they come upon a gun, that they may seize that gun as evidence of the narcotics case. So your basic position is any narcotics warrant allows officers to seize a gun on the theory that the possession of a gun by the subject of a search warrant is proof tending to show that the person is dealing in narcotics. Is that your position? That's correct. You know, I'm going to quote from... Isn't that sort of a wide inference that you're trying to... I'm going to quote from, I think it was the First Circuit case of Caggiano, where the court said, any reasonable, competent police officer who discovered firearms while searching for drugs would be immediately aware of their evidentiary significance. And it's our position that the courts have held that there is this nexus, this connection between firearms and narcotics activity, and that that connection is close enough that it would allow the police officers to seize the firearms under those circumstances. This term, the United States Supreme Court will hear argument in a case involving the Second Amendment, and whether the Second Amendment gives private individuals the constitutional, federal constitutional right to keep and possess firearms. How would that impact a case like this, if the court were to say that? I don't believe that it would impact that. Well, you seem to argue from a presumption that the presence of a weapon in an area that law enforcement has a warrant to search may be presumed to be illegally possessed. Right? Isn't that the inference you're arguing from Simpson? And that it's evidence of the drug crimes and that it may be used. As the court noted, there are specific crimes for possessing weapons. It could be evidence of those crimes. So that it's specific evidence of the crime or evidence that may be used at trial against the defendant. So wouldn't that presumption yield to a constitutional right to possess firearms? I think as it stands now, people have a constitutional right to possess fire, possess firearms. We have firearms laws that allow people to possess firearms. However. You know, the last time the Supreme Court spoke to this issue, they said the Second Amendment does not confer a private right to own and possess firearms. But people say. If they uphold the D.C. Circuit in this case, they will say that it does. I don't. And you think that would not affect the presumption you're arguing from here today? No. It's our position that it would not change the legal analysis as established in Simpson and the other circuits. That when conducting a search warrant for narcotics, that that nexus is still there. And it still shows that the firearm is evidence of the crime. And it's our position that it would not change that. So in this circumstance, if Jones had not been a felon, then let's assume further that the Supreme Court has said the Second Amendment confers a private right of gun ownership. And Jones had said, wait a minute. That's my gun. And I have a constitutional right to possess that gun. You have no business seizing it. What would be the circumstance? The circumstance would have been that the gun was seized in this particular case. In that circumstance, there would be no crime, right? That's correct. Well, let me, so your position, what you're arguing to this Court is that possession of a gun is proof that you're dealing in maybe evidence used at a trial, that you're dealing in narcotics, even though the Supreme Court may well hold, not saying that it will or will not, that you have a constitutional right to possess a gun. So anyone who possesses a gun, and that's a constitutional right, can fear that that gun will be used against them as evidence that they're dealing in narcotics. That's your position, isn't it? If they're dealing in narcotics, you know, that is what we believe the case law is now, and that's our position, that it will be, even if the Supreme Court decides that case that way. That is correct, that it would be evidence, and that it could be used in their narcotics prosecution. That's correct. Why should that be evidence that could be used in a narcotics prosecution when, as Judge Hawkins has said, you might have a constitutional right to possess that gun? In trials, we can put on, the government can put on evidence or whatever side can put on evidence in regard to how drug dealers routinely use weapons to protect their drugs, how they routinely use weapons in the drug trade, and how common the possession of weapons is by drug dealers. So there can be testimony, expert testimony, in regard to that particular issue from law enforcement officers. So if I have some hunting guns, you could prosecute me relying on that possession as a narcotics dealer? We're not saying we're going to, this is in a situation where we already have the narcotics case and the narcotics investigation. These are, you know, a hypothetical situation. The officers have a warrant based on information that Judge Cowan's son, I don't know if he even has one, has been smoking marijuana in his bedroom. Would that give law enforcement the right to come into Judge Cowan's house and seize his hunting rifles? It's our position that it would give them a right to seize the weapons at the scene. However, each case is going to be viewed separately by, you know, by a jury, by the court, and by the prosecution factually. So while each case has to be looked at individually, it's our position that under Simpson that in a narcotics investigation, the officers do have a right to go in and seize the firearms. Okay. We've taken over your time. Thank you. Thank you very much for your argument. We'll give you 30 seconds for rebuttal, counsel. Thank you very much. I don't think we need to go ahead and wait for the Supreme Court's pronouncement on the Second Amendment issue. I think that Richards has been very clear on what we need to do. Richards has said we cannot overgeneralize, and Richards has said we cannot overgeneralize in a situation where the standard is lower than here. There the standard is reasonable suspicion. Here the standard is probable cause. But Richards didn't say that. Richards just ruled on a knock-and-announce case and a generalized nexus. It didn't say anything about any other case. Where does it in Richards say anything about any other case? It doesn't say anything about any other case. It says on a generalized nexus you can't violate the knock-and-announce rule. That's the best it said. And what you're trying to say is we want to analyze or analogize that precedent into this case and suggest that this circuit ought to overrule Simpson based on that generalized analysis. Isn't that your argument? Well, Your Honor, what I'm saying is that if the court said in Richards that under a lower standard you cannot draw an overgeneralization, it certainly would say that under a higher standard probable cause. But there is no Supreme Court standard saying it. You're just analogizing that. It is an analogy. Okay. Thank you for your argument. Thank both sides for your fine arguments. The case just argued will be submitted.
judges: Hawkins, Smith, Cowen